PASTEUR *v.* NISWANGER.

5-919                                          290 S. W. 2d 852

Opinion delivered June 4, 1956.

J. W. Patton, Jr., and Shaver, Tackett & Jones, for appellant.

Fulton, Hancock & McClain and Keith & Clegg, for appellee.

LEE SEAMSTER, Chief Justice. This appeal is from the Lafayette Chancery Court. The court decreed partition and sale of a leasehold working interest in an oil and gas lease on 40 acres of land in said county. The question involves the right of the court to enter a judgment for partition and order of sale of the leasehold working interest owned by the parties, under the facts in the case.

Appellant Edna Mae Pasteur acquired the ownership of the lease in question. To get the funds necessary to drill or work the lease, she sold and assigned a one-half interest in the lease to Adma C. Niswanger for the sum of $9,000, and Pasteur contracted with Niswanger to drill a well on the premises and if oil was found to also drill a second well thereon, to be commenced within six months from the completion of the first well.

By a later agreement between said parties Pasteur agreed to drill this second well on the leasehold premises and Niswanger was to pay her an additional $17,000 to pay for one-half of the cost of drilling the second well. Niswanger paid to Pasteur the $17,000 and still owns a half interest in the leasehold estate.

To provide funds for her part of the cost of drilling the second well, Pasteur sold other interests in the leasehold working interest; To appellant, Eddie Adamson, a one-sixteenth interest; to appellant, M. H. Harrell, three-sixteenths interest. Harrell mortgaged his interest to Farmers and Merchants National Bank of Gilmer, Texas; and to the appellee, Iris Jordan a one-sixteenth interest. Pasteur retained three-sixteenths interest in the lease. The working interest of seven-eighths is also subject to two overriding royalty interests, one eighth of one-eighth of seven-eighths leasehold interest held by Carter Oil Company and one-sixteenth of seven-eighths of leasehold interest held by T. C. Short.

The parties now own the respective interests as set out above in the leasehold working interest, including all machinery and personal property used on the premises. Both of the wells drilled by Pasteur were producing wells. The oil produced from the two wells is now being severed from the soil and delivered through oil pipe lines to the market.

Appellees filed the partition suit on the sole ground that they are co-tenants of the appellants in the leasehold estate and as such are entitled to a sale under partition and division of the proceeds of such sale among the parties as their interests are set out herein.

There is no evidence on this point but Title 53 of Arkansas Statutes, 1947, creates the Oil and Gas Commission and gives it jurisdiction over the production and sale of oil and gas in this state as a conservation regulation of such industry. It is necessary to secure a permit from the Commission before drilling starts for oil or gas. Where there is production, a division order requiring the proper measuring of the oil at the time of delivery to the pipeline, and a designation of the owners and their interest in the oil to be delivered must be set out. We assume the parties have complied with the law in drilling and selling the oil from the two wells here involved.

Our court has held that an oil and gas lease conveys an interest and easement in land itself, but no title passes until the oil and gas is reduced to possession. *Clark* v. *Dennis*, 172 Ark. 1096, 291 S. W. 807; *Osborn* v. *Arkansas Territorial Oil and Gas Co.,* 103 Ark. 175, 146 S. W. 122; *Davis* v. *Collins,* 219 Ark. 948, 245 S. W. 2d 571.

Oil severed from the soil and reduced to possession becomes personal property. *Shreveport-El Dorado Pipe Line Co.* v. *Bennett,* 172 Ark. 804, 290 S. W. 929.

No attempt was made in this case to partition the land upon which the lease exists. Our statute, Sec. 34-1801 Ark. Stats. 1947, provides for the partition of land. Owners of leasehold working interests are not co-tenants of the owners of the fee or surface of the land. Their

interests are of a different kind. Their interests are also of a different kind to the interests of the owners of mineral rights where severed from the land.

The mineral interests in land may be partitioned under the provisions of Sec. 53-401, Ark. Stats. 1947, and related sections, under the conditions therein set out. None of the statutes apply to the facts in this case or to the partition of a leasehold working interest. *Warfield Natural Gas Co.* v. *Cassady,* 266 Ky. 217, 98 S. W. 2d 495; *Hall* v. *Vernon,* 47 W. Va. 295, 34 S. E. 764; *Beardsley* v. *Kansas Natural Gas,* 78 Kan. 571, 96 P. 859, 173 A.L.R. 860, note 5.

There is no statutory right, to compel the partition of a leasehold estate working interest in this state. The right to have partition in equity is based upon the application of equitable principles, and only upon showing facts indicating sufficient reason for equitable interference. 173 A. L. R. p. 850-859.

In the case of *Fry* v. *Dewees,* 151 Kan. 488, 99 P. 2d 844, the court held that where there is production operating under a division order partition has already been made.

It has been held that there is no ground for partition of personal property where it is divisible by weight, a measure or number into portions identical in quality and value. There would be no dispute that a court of law or equity could settle. Counting, weighing and measuring are not judicial but ministerial functions. 40 Am. Jur. p. 87, Sec. 104.

The object of a leasehold estate working interest is to produce the mineral sought. As long as there is production, there is partition. Under the facts in this case the right to partition by the court should be denied.

The decree is reversed and the petition for partition is dismissed.

Justice McFADDIN concurs.

ED. F. McFADDIN, Associate Justice (Concurring). From a decree of the Chancery Court ordering a sale of

the properties of all the parties, there is this appeal, challenging the validity of the order of sale. The appellants are Edna Mae Pasteur, Eddy Adamson, M. H. Harrell and the Farmers & Merchants National Bank of Gilmer, Texas. The appellees are Adma C. Niswanger and Iris Jordan.

The appellants and appellees together own a leasehold working interest in the SW¼ SW¼ Sec. 10, Twp. 16 S., R. 24 W., LaFayette County, Arkansas. All the parties herein are agreed: (a) When the original oil and gas leases were executed on the above 40 acres, there was a 1/8th interest retained by the landowner and called the "royalty interest". That interest is not involved herein. The remaining 7/8ths interest in the minerals was called the "leasehold interest". (b) On the particular 40-acre tract here involved there was carved out of this 7/8ths leasehold interest two overriding royalty interests, and being:

1/8 of 1/8 of the 7/8 or leasehold interest held by Carter Oil Company; and 1/16 of 7/8 of the 7/8 or leasehold interest held by T. C. Short. (c) The remainder of the leasehold interest (after the over-riding royalty interest in (b) above) is the leasehold working interest and is owned by the appellants and the appellees in these proportions:

| | |
|---|---|
| Appellee, Adma G. Niswanger | 1/2 |
| Appellee, Iris Jordan | 1/16 |
| Appellant, Edna Mae Pasteur | 3/16 |
| Appellant, Eddy Adamson | 1/16 |
| Appellant, M. H. Harrell (subject to the mortgage of the Farmers & Merchants National Bank of Gilmer, Texas) | 3/16 |

On August 26, 1952, appellant, Pasteur, owned all of the aforesaid leasehold working interest mentioned in (c) above, and made a contract with appellee, Niswanger, whereby, for the sum of $18,000.00 duly paid,

Pasteur assigned to Niswanger 1/2 of the said leasehold working interest owned by Pasteur, and also agreed to drill a well on the 40 acres of oil and gas. This well was drilled and became a producer; and then it became necessary to drill another well on the 40-acre lease, for half of the expense of which second well Niswanger became liable. She was advised by Pasteur that Niswanger's portion of the expense of the second well was $17,000.00, which amount Niswanger paid. Both wells were producing at the time of the litigation in the lower court.

On January 7, 1954, Niswanger filed this suit in the Chancery Court, praying for an accounting and claiming that Pasteur, in the operation of the wells, had overcharged Niswanger on the cost of the second well and had also failed to properly handle the finances of the entire leasehold working interest. Later, by an amendment, Niswanger alleged that the other parties to this litigation (besides Niswanger and Pasteur) had acquired interests in the leasehold working interest from Pasteur, and they were brought in as parties; and then Niswanger, by amendment, prayed that the entire lease-hold working interest of all parties in this litigation, including the machinery and equipment of the two wells, be sold and the proceeds held for partition after the accounting. Iris Jordan joined with Niswanger in seeking sale and partition, which was resisted by all the other parties. The Chancery Court ordered the sale of the lease-hold working interest of appellants and appellees and also the sale of the equipment and machinery of the appellants and appellees at the two wells. All of this was in advance of hearing the other questions in the case: it was conceded that there would be a subsequent accounting.

The parties on this appeal have briefed the case on the question of whether there can be a partition of oil and gas leasehold rights. I do not understand that to be the vital question. The real questions in this litigation are: (1) What was the status of the appellants and appellees between themselves; i.e., were they joint adventurers, partners, or what? (2) Whatever their status,

did equity have the power to sell the corpus of their holdings in advance of deciding whether there had been a breach of the operating agreement; i.e., could equity sell the corpus until it was first shown that a cause of action existed to justify the winding up of the relationship? I think the present decree should be reversed and the cause remanded to the Chancery Court for trial and decision on the two questions stated in this paragraph.