GUARANTY NATIONAL INSURANCE Company, et al. *v.* DENVER ROLLER, INCORPORATED and Citizens Fidelity Insurance Company

92-1143                                854 S.W.2d 312

Supreme Court of Arkansas
Opinion delivered May 10, 1993

130

*Davidson, Horne, & Hollingsworth*, by: *Chet Roberts* and *Allen W. Horne*, for appellants.

*Catlett & Stubblefield*, by: *S. Graham Catlett* and *John T. Root, Jr.*, for appellees.

TOM GLAZE, Justice. This appeal comes to the court from a declaratory judgment action and action for damages instituted by the appellees, Denver-Roller (Roller) and Citizens Fidelity

Insurance Company (Citizens), against the appellants, a group of affiliated business organizations which are competitors of Roller. The parties are either funeral service providers or affiliated insurers. A dispute has arisen because Roller's contracts for funeral benefits make payment in "services and merchandise only," while the contracts issued by appellants provide for payment in cash, as well as services and merchandise.

A little background information on the funeral service industry, its standards and customs, is necessary for a complete understanding of the posture of this case. It is a common practice for a funeral home itself, or an affiliated insurance company or burial association, to sell contracts which provide for funeral services at the consumer's death. These contracts most often take one of three forms: (1) Burial Association Certificates, issued pursuant to Ark. Code Ann. § 23-78-101—23-78-125 (Repl. 1992), which are certificates issued by a burial association and are often reinsured by an insurance company so that the company assumes the obligation of providing benefits to the beneficiary (member) of the Burial Policy; (2) Insurance Policies, which are issued by a life insurance company (benefits are payable in "cash," or "services and merchandise only," or both); and (3) "Pre-Need" Contracts, issued pursuant to Ark. Code Ann. § 23-40-101—23-40-118 (1987), which allow a consumer to pre-select the casket, vault, and other merchandise to be utilized at his or her funeral. Although the general purpose behind each of the three types of contracts is identical, the parties' contentions are focused on the "pre-need contracts" and their terms.[1]

If the services are provided and performed by the funeral home with which the consumer had contracted, no problem arises. In addition, even if the survivors of the consumer decide to have the funeral at an unauthorized funeral home, the facts show

---

[1] Legislative and administrative amendments, enacted subsequent to execution of the contracts and policies at issue today, preclude strict enforcement of "service and merchandise-only" clauses in both burial certificates [Ark. Code Ann. § 23-78-112(b) (Repl. 1992)] and insurance policies [Rule and Regulation 30, promulgated by the Arkansas Insurance Commissioner, effective March 1, 1988; Ark. Code Ann. § 23-71-111 (1987)]. However, no legislative action as yet has been taken to amend Ark. Code Ann. § 23-40-109(d)(1) (1987), which provides that sellers of pre-need contracts may contract to provide "merchandise and services."

that the survivors still do not suffer any financial harm because the industry uniformly provides .100% of the services and merchandise provided under the competitor's contract. In short, this reflects a business decision made for the benefit of the unauthorized competing home, even though no funeral home is required, by law or contract, to accept the terms of any other funeral home's contract. It is widely acknowledged that the second funeral home could either send the survivors back to the funeral home with which the consumer contracted or, could accept and credit the policy, thus, providing the services at the customary charge. The situation largely becomes problematic when the second funeral home which provided the funeral attempts to redeem the policy or contract at the funeral home with which the consumer originally contracted.

In this action, Citizens (affiliated with Roller) sold both "cash" policies and "service and merchandise-only" policies. Currently, Citizens has approximately 200,000 policy holders of "service and merchandise-only" policies. It should be noted that with each premium notice sent to policy holders, Roller included a banner-trimmed statement notifying the consumer that his or her "services and merchandise-only" policy could be converted into a cash policy. An unincorporated division of Roller, Assured Peace Funeral Plan (Assured), sold and issued Pre-Need Contracts performable at any Roller funeral home. On the other hand, appellant Madden Enterprises, Inc., (Madden) is a funeral service company in direct competition with Roller, and Madden's subsidiaries include Wilson Funeral Home and North Arkansas Funeral Home. Madden's affiliated insurers are Guaranty National Insurance Company and North Arkansas Burial Association, and these affiliates do not sell "service and merchandise-only" contracts, but rather, have issued contracts providing benefits payable in cash.

The undisputed facts show that the survivors of four separate individuals, who had contracted with either Citizens or Assured for funeral benefits, presented Madden's affiliates with "service and merchandise-only" contracts. In each instance, Madden accepted assignment of the contract and notified Roller. In turn, Roller agreed to perform the contracts as written, that is, to provide the contracted-for merchandise and services to the assignee funeral home. Madden refused Roller's offers, and

instead, demanded the cash equivalency value of the policy. Roller refused to pay the benefits in cash. In retaliation, Madden refused to uphold its clear contractual obligation to provide the cash equivalent of numerous policies issued by it which were assigned to Roller funeral homes. Roller then brought this action.

Roller brought the two following actions: (1) for damages, seeking to have Madden and its affiliates found to be in breach for failure to pay benefits in cash, as required by its own policy; and (2) for declaratory judgment, to have its "services and merchandise-only" contracts adjudged legal and enforceable. Madden counterclaimed for declaratory relief, contending the contract restrictions were invalid because they were (1) in unlawful restraint of trade, (2) resulted in a forfeiture of accrued benefits, (3) resulted in Roller's unjust enrichment, and (4) violated public policy. Notably, prior to trial, Madden conceded it was obligated to pay cash to Roller as required by its contracts, and thus, that portion of the dispute was resolved and has not been appealed.

A hearing was held and evidence was submitted to Chancellor Robin Mays. Judge Mays entered her findings of fact and conclusions of law on April 20, 1992, holding that the evidence presented was insufficient to establish any of the various grounds for invalidating Roller's "service and merchandise-only" contracts. Judge Mays also refused to comply with Madden's plea to reform the contract executed between the deceased and Roller, and dismissed Madden's counterclaim. On June 30, 1992, the trial court entered its decree from which Madden appeals. We affirm.

## I. Unlawful Restraint of Trade

Appellants first contend the trial judge erred in failing to invalidate "services and merchandise-only" contracts as Unlawful Restraints of Trade. After hearing testimony, Judge Mays made the following ruling:

> The evidence was insufficient to show that the effect of these contracts results in unfair competition and restraint of trade. The evidence showed that there is strong competition among funeral homes in the same locality and that it is possible for new funeral homes to compete with existing funeral homes.

On appeal, appellants contend the chancellor erred twice; first, by failing to credit all of the evidence showing actual anti-competitive effect, and second, by focusing exclusively on the effect of appellees' anti-competitive contracts, and not considering whether anti-competitive *intent* is itself a sufficient basis for invalidating the contracts.

Appellants' first contention is without merit. Considering the evidence in the light most favorable to the appellee, the appellate court tries chancery cases de novo on the record, and does not reverse a finding of fact by the chancellor unless it is clearly erroneous. *McGuire* v. *Bell*, 297 Ark. 282, 761 S.W.2d 904 (1988). The chancellor here heard the testimony of Bill Booker, an employee of Roller, who stated that the Roller corporation was forced to sell its Osceola operation to a new competitor, appellant Wilson Funeral Home, because of Rollers' increasing loss of market share in the area. Further, Booker testified that in the towns of Helena-West Helena and Marianna, Roller-controlled funeral homes had been consistently losing market share since a competitor opened its doors in 1989. Therefore, seeing that competition in this line of business has remained strong throughout the period in which these contracts have been enforced, we hold that the chancellor's finding of no anti-competitive effect is not clearly erroneous.

Moreover, we find no merit in the contention that the chancellor failed to credit the testimony of Harry Legget, who stated that enforcement of "service and merchandise-only" contracts did indeed injure competition. It is well settled that questions raised regarding the weight or credibility of an expert witness' testimony go to the weight or credibility of his testimony, and any argument regarding the weight of that opinion is a matter to be decided by the chancellor. *C.R.T., Inc.* v. *Brown*, 269 Ark. 114, 602 S.W.2d 409 (1980). Also, the chancellor is in a superior position to evaluate the credibility of witnesses and is not bound to accept the testimony of a witness as true where a reasonable inference contrary to his testimony could have been drawn from the facts stated or from other facts and circumstances shown by the evidence unfavorable to his conclusion. *Roe* v. *Dietrich*, 310 Ark. 54, 835 S.W.2d 289 (1992).

We next confront appellants' alternative contention for

finding an unlawful restraint of trade. In their brief, appellants argue that "in focusing exclusively on the effect" of the contracts, the chancellor "failed to consider whether anti-competitive *intent* is itself a sufficient basis under Arkansas law for invalidating the challenged contracts." In addition, the arguments raised in this portion of appellants' brief unquestionably center around "a proper construction of the law," which appellants contend support a cause of action based solely upon an improper purpose. It is clear from the foregoing that appellants are arguing, or more appropriately conceding, that the chancellor never rendered a determination as to whether or not, under the law of Arkansas, a restraint of trade cause of action will lie upon the "intent" theory.

An examination of the record reflects that appellants consistently presented the chancellor with its "intent is enough" argument. However, it is even more clear from review of the findings of fact and conclusions of law that the chancellor failed to specifically rule whether an intent to injure, alone, armed appellants with a valid and recognized cause of action. As argued in appellants' brief, the "law" is the issue under this portion of appellants' restraint of trade argument, not the evidence, and it is clear the chancellor never ruled on the "law." The burden to obtain a ruling on a particular theory of recovery is on the appellant. *National Lbr. Co.* v. *Advance Development Corp.*, 293 Ark. 1, 732 S.W.2d 840 (1987); *see also City of Springdale* v. *Town of Bethel Heights*, 311 Ark. 497, 845 S.W.2d 1 (1993). It is well established that matters left unresolved at trial are waived and may not be relied upon on appeal. *Carpetland of N.W. Ark., Inc.* v. *Howard*, 304 Ark. 420, 803 S.W.2d 512 (1991).

Even if this court were inclined to stretch the chancellor's finding and holding, "that the evidence presented was insufficient to establish any of the various grounds for invalidating appellees' . . . contracts," into a ruling on the "intent" theory of recovery, the appellants' cause must still fall. The contracts at issue were entered and executed between vendors and vendees. John B. Frazier, Chairman of the Arkansas Burial Association Board, testified on cross-examination by appellants, that the "purpose" of providing service and merchandise-only contracts was, "to assure that the wishes of the deceased are carried out . . . so somebody can't come in there and take the money away from — for the purpose it was intended." Counsel for appellants then

asked:

Q. Okay. Does that not have the effect of tying that person, his family, to having that funeral service at Frazier Funeral Home?

A. Certainly it does, because that's the intent.

Appellants, using the above testimony and citing *American Excelsior Laundry Co.* v. *Derrisseaux*, 204 Ark. 843, 165 S.W.2d 598 (1942), argue the primary purpose of Roller's contracts tends to create a monopoly and the law makes such contracts unlawful. First, the *Derrisseaux* case is inapplicable because that case involved a covenant not to compete and involved matters not in issue here. Second, while the rule of law relied on by appellants is good law, that rule does not control here. The general rule is contracts and combinations which tend to promote business, and which only remotely, incidentally and indirectly restrain competition are not forbidden. 54 Am. Jur. 2d Monopolies, etc. § 457 (1971). Frazier's testimony that the primary purpose of such contracts was to assure compliance with the intentions of the contracting party make it clear that there was a legitimate purpose behind inclusion of the restriction. Further, even if the contracts had the intent and effect of "tying" consumers to the contracting funeral home, the evidence shows that those homes which employed the contracts did so merely to maintain the business of their original contracting customers. Since the restrictive provisions were employed for the purpose of promoting business, and since enforcement created only an indirect and incidental effect upon competition, we decline to overturn the decision of the chancellor.

## II. Forfeiture

Appellants contend that enforcement of the "service and merchandise-only" clauses results in a forfeiture of benefits. This argument is without merit. It was clearly established at trial that Arkansas funeral homes almost uniformly provide 100% credit to consumers on policies issued by competing funeral homes, regardless of whether the servicing funeral home receives the contract amount in cash from the original issuing funeral home or insurer. This is true even for "service and merchandise-only" contracts and policies, as well as those providing cash benefits.

It is well settled that "assignees can receive no better right than their assignors had." *Pacific Nat'l Bank* v. *Hernriech*, 240 Ark. 114, 398 S.W.2d 221 (1966). Hence, the appellants were bound by the language of the contract, and thus, were only entitled to merchandise and services. Similarly, the issuer of the contract was also bound. In this case, the appellees tendered performance under the terms of the contracts by delivering up the agreed-to merchandise and services. Appellants refused to accept the contractually required tender, and instead, demanded payment of benefits in cash.

Appellants are attempting to stand in the shoes of the consumer; however, a claim of forfeiture can only be brought by the party suffering the forfeiture. In any event, the consumers here have not suffered a forfeiture due to the industry practice of giving 100% credit on competing policies and contracts. Moreover, neither have the appellants forfeited anything. They may not have exercised their contractual right to receive the benefits of the contract—merchandise and services—as payment under the policy, but failure to take hold of goods to which you are entitled, does not constitute a forfeiture.

In *Greg Burial Association* v. *Emerson*, 289 Ark. 47, 709 S.W.2d 47 (1986), we impliedly stated that restrictions even more harsh than that at bar would be enforced, so long as the language of the restriction was clear and unambiguous. The contracts at issue clearly state the issuer "does not provide cash benefits." The intentions of the original parties to the contracts are clearly reflected in the contract, and thus, this court has no power to reform the terms. See *American Alliance Ins. Co.* v. *Paul*, 173 Ark. 960, 294 S.W.2d 74 (1927).

Further, we agree with the chancellor that the "no-assignment" clause in the Roller contracts merely precludes the consumer from assigning his or her contract to another beneficiary. That provision in no way affects the survivors' right to present the contract to a competing funeral service provider for 100% redemption.

The chancellor's ruling that enforcement of the restriction does not result in a forfeiture is not clearly erroneous.

### III. Unjust Enrichment

Appellants next contend that appellees' retention of the scheduled benefits results in appellees' unjust enrichment. The chancellor found no unjust enrichment and stated the following:

> Plaintiffs (Roller) have not breached the contracts and stand ready to perform by providing the merchandise called for under the contract and by providing any services desired by defendants.

Basically, to find unjust enrichment, a party must have received something of value, to which he was not entitled and which he must restore. There must also be some operative act, intent, or situation to make the enrichment unjust. *Dews* v. *Halliburton Industries, Inc.*, 288 Ark. 532, 708 S.W.2d 67 (1986). It is rudimentary that "one who is free from fault cannot be held to be unjustly enriched merely because one has chosen to exercise a legal or contractual right." *Merchants & Planters Bank & Trust Co.* v. *Massey*, 302 Ark. 421, 790 S.W.2d 889 (1990).

It is clear that the appellees are in no way at fault, and were merely performing consistent with the terms of the contract. The only reason presented as to why appellees continue to retain the accrued benefits is because the appellants would not accept such benefits. Clearly, appellees have not been unjustly enriched and the chancellor was correct in her ruling.

### IV. Void as Against Public Policy

Appellants finally argue that the "service and merchandise-only" contracts are illegal and void as against public policy. Again we find no merit in appellants' contention.

An insurer may contract with its insured upon whatever terms the parties may agree which are not contrary to statute or public policy. *Aetna Ins. Co.* v. *Smith*, 263 Ark. 849, 568 S.W.2d 11 (1978). In *Huntsman* v. *Carroll*, 177 Ark. 432, 6 S.W.2d 551 (1928), this court declared the general rule that a contract is against public policy if it is injurious to the interests of the public, or contravenes some established interest of society or some public statute, or is against good morals, or tends to interfere with the public welfare. The facts showed that the public

is not harmed by enforcement of these contracts because virtually all funeral homes grant 100% credit for competing contracts.

More recently, this court has held that, "the public policy of this state is found in its constitution and statutes." *Wal-Mart Stores, Inc.* v. *Baysinger*, 306 Ark. 239, 812 S.W.2d 463 (1991); *Sterling Drug, Inc.* v. *Oxford*, 294 Ark. 249, 743 S.W.2d 380 (1988). The General Assembly has not prohibited the inclusion of "service and merchandise-only" clauses in pre-need contracts and thus, this court is without the power to find such restrictions void as against public policy. Further, the recently enacted amendments requiring that benefits under burial certificates and insurance policies be payable in cash, changed substantive rights and thus, those amendments cannot be retroactively applied. *Carmichael* v. *Nationwide Life Ins. Co.*, 305 Ark. 549, 810 S.W.2d 39 (1991). Accordingly, the public policy regarding burial certificates and insurance policies cannot be employed to invalidate pre-need contracts executed prior to those amendments.

The chancellor's finding that "service and merchandise-only" contracts are not void as against public policy is not clearly erroneous.

Affirmed.