# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2523

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * Eastern District of Arkansas. |
| H. G. Frost, Jr., also known as | * |
| Jack Frost, | * |
| | * |
| Appellant. | * |

_____

Submitted: January 14, 2003

Filed: March 7, 2003

_____

Before WOLLMAN and MURPHY, Circuit Judges, and GRITZNER,[1] District Judge.

_____

WOLLMAN, Circuit Judge.

After a trial by jury, H. G. Frost, Jr. was convicted on one count of mail fraud in violation of 18 U.S.C. § 1341, two counts of wire fraud in violation of 18 U.S.C. § 1343, sixty-two counts of money laundering in violation of 18 U.S.C. § 1957, three counts of filing a false tax return in violation of 26 U.S.C. § 7206(1), one count of making a false declaration before a grand jury in violation of 18 U.S.C. § 1623, and

_____

[1]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa, sitting by designation.

one count of obstruction of justice in violation of 18 U.S.C. § 1503. On appeal from the judgment entered by the district court,[2] Frost contends that the evidence was insufficient to support his convictions for mail fraud, one of the wire fraud counts, and thirty-three of the money laundering counts associated with those two fraud counts. We affirm.

I.

Frost was a certified public accountant who worked exclusively for Harvey Jones, the Jones Investment Company, the Harvey and Bernice Jones Charitable Trust (the Trust), and other entities created by the Joneses. The Trust had two trustees, Frost and Bernice Jones, wife of Harvey Jones. After the death of Harvey Jones, Frost continued to work for the Jones entities. He was paid for his work, including all work performed on behalf of the Trust, by the Jones Investment Company. Bernice Jones was also paid for her work on behalf of the Trust from the Jones Investment Company. The Trust instrument contained only one reference to the compensation of trustees: "After the donor's death, the trustees may charge and deduct reasonable compensation for the services rendered and the responsibilities assumed." On May 17, 1990, Frost stated to the Internal Revenue Service that the trustees would not be paid from the Trust, and that if they ever were, the trustees would consult with the trust departments of regional banks to determine reasonable compensation.

In November 1993, Frost began to withdraw money from the Trust without the consent of Bernice Jones. Frost sent money from the Trust to Murco Oil for investment in oil wells. All royalty payments from those wells were paid to Frost. Frost wired money from the Trust to his personal account at Goldman Sachs, a New

[2]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

York investment firm. Some of these funds were applied to Frost's personal stock and bond investments. Frost also wrote checks to himself from the Trust checking account, purportedly for "compensation." Checks drawn on the Trust checking account required the signatures of both trustees. Frost stipulated that he placed Bernice Jones's signature and initials on a number of invoices and checks. Frost received through the mail checks and bank statements from the bank holding the Trust account.

From November 1993 to January 1997, the Jones Investment Company paid Frost $1,110,708 for his services to the Jones entities, including the Trust. In addition, Frost obtained $1,852,245.67 of Trust money for his personal use. Frost contends that under Arkansas law he was permitted to withdraw reasonable compensation from the Trust without Bernice Jones's consent and that consequently the evidence does not support the fraud conviction and related money laundering charges arising from the $1,261,373 paid to him from the Trust by check. For the same reason, he argues for reversal of the wire fraud conviction and associated money laundering charges representing the $225,000 of the wire transfer to his Goldman Sachs account that he recorded in the Trust's books as fees.

II.

In considering a challenge to the sufficiency of the evidence, we review the evidence in the light most favorable to the verdict and accept as established all reasonable inferences supporting the verdict. United States v. Oleson, 310 F.3d 1085, 1088 (8th Cir. 2002). We review the district court's legal determinations de novo, and uphold the conviction if a reasonable jury could conclude that the defendant was guilty beyond a reasonable doubt. Id.

>   To establish a case of mail fraud, the prosecutor must show the
>   defendant (1) voluntarily and intentionally devised or participated in a

scheme to obtain money or property by means of false representations or promises, (2) entered into the scheme with the intent to defraud, (3) knew it was reasonably foreseeable that the mails would be used, and (4) used the mails in furtherance of some essential step in the scheme.

United States v. Kelley, 152 F.3d 881, 887 (8th Cir. 1998). "The essential elements of wire fraud are: (1) a scheme to defraud, (2) use of interstate wires incident to the scheme, and (3) intent to cause harm." United States v. Ross, 210 F.3d 916, 923 n.8 (8th Cir. 2000).

The evidence presented to the jury, viewed in a light most favorable to the verdict, proves a violation of the mail and wire fraud statutes. Frost devised a scheme to defraud the Trust, he intended to defraud the Trust, and he used the mails and wires to implement his scheme. This case does not represent a simple misunderstanding as to how Frost was to be compensated for his services to the Trust. Frost's practice was to submit a quarterly invoice for all of the hours he worked for the various Jones entities and to receive compensation for all work, including Trust work, from the Jones Investment Company. Frost was so compensated during the relevant time period. The evidence at trial indicated that Frost believed he needed Bernice Jones's consent prior to compensating himself from the Trust. Checks drawn on the Trust's checking account required the signatures of both Frost and Bernice Jones. Frost forged Bernice Jones's signatures on invoices and checks to make it appear that Bernice Jones had authorized the payments.

Frost does not attack the government's proof on any of the statutory elements. Instead, he argues that nothing in Arkansas law or the trust instrument requires the consent of both trustees before one may be compensated by the trust for services rendered to the trust. We do not agree that the government, having proved beyond a reasonable doubt each element of the offense, must also prove a violation of Arkansas law. See United States v. Williams, 545 F.2d 47, 50 (8th Cir. 1976) (per

curiam).  If Arkansas law did control this point, however, we would hold that Frost was required to obtain the authorization of Bernice Jones before compensating himself from the Trust account.  See Dunklin v. Ramsay, 944 S.W.2d 76, 78 (Ark. 1997) ("[C]o-executors and co-trustees must act as an entity in matters pertaining to the administration of the estate; any other rule would lead to confusion and chaos and create unnecessary charges against estate funds." (citation omitted)).  Arkansas courts frequently look to the Restatement as authoritative on the law of trusts.  See, e.g., Wisener v. Burns, 44 S.W.3d 289, 292 (Ark. 2001) ("When reviewing trust cases in Arkansas, we have followed the Restatement (Second) of Trusts."); Peek v. Simmons First Nat'l Bank, 832 S.W.2d 458, 461 (Ark. 1992).  The Restatement (Second) of Trusts § 383 provides:  "If there are several trustees of a charitable trust, the powers conferred upon them can properly be exercised by a majority of the trustees, unless it is otherwise provided by the terms of the trust."  Like the district court, we interpret the language of the trust instrument to permit the two trustees jointly to authorize reasonable compensation, but not to permit one trustee to take compensation against the will of the other.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.