Harold RIGSBY *v.* Brett RIGSBY

03-318                                                   149 S.W.3d 318

Supreme Court of Arkansas
Opinion delivered February 26, 2004

*Christian & Byars*, by: *Joe D. Byars, Jr.*, for appellant.

*James O. Cox*, for appellee.

JIM HANNAH, Justice. Appellant Harold Rigsby appeals the order of the Logan County Circuit Court finding that his son, appellee Brett Rigsby, is entitled to an undivided one-half interest of real property located in Magazine, Arkansas. This case has previously been before this court on two occasions. *See Rigsby v. Rigsby*, 340 Ark. 544, 11 S.W.3d 551 (2000) (*Rigsby I*), and *Rigsby v. Rigsby*, 346 Ark. 337, 57 S.W.3d 206 (2001) (*Rigsby II*). Since this case is a subsequent appeal following an appeal which has been decided in this court, we have jurisdiction of the case pursuant to Ark. Sup. Ct. R. 1-2(a)(7) (2003).

*Facts*

A recitation of the facts may be found in *Rigsby II*; we therefore limit a restatement of the facts necessary to an understanding and a determination of the issues raised by Harold for reversal. In *Rigsby II*, Harold appealed the trial court's order finding that he and Brett formed a partnership in 1984 when they agreed to undertake a mutual debt for the purpose of the new house, and that the real property then became property of that partnership. Harold also appealed the trial court's finding that Harold and Brett were equal partners in the ownership of the land, and that such ownership extended to all mineral interests. We reversed the part of the trial court's order regarding the ownership of the real property and respective mineral interests, and we remanded the case for a determination of whether Brett was entitled to any relief.

Subsequent to our decision in *Rigsby II*, Brett filed an amended complaint, in which he argued, *inter alia*, that Harold should be estopped from asserting that he owned the property individually. In his answer, Harold argued that Brett was not entitled to an equitable claim, and he specifically denied that Brett was entitled to any interest in the mineral rights of the property.

The trial court held a hearing to determine whether Brett was entitled to any relief. At the hearing, Harold stated that in 1971, he acquired both the surface rights and the mineral rights to

the real property at issue. Harold stated that prior to the trial court's determination that both he and Brett were entitled to reserve their respective interests in the mineral rights, he had received all royalties from the mineral rights on the property and had not paid any of the royalties to Brett. Harold testified that he did not recall Brett ever asking him for mineral rights.

Brett testified that, prior to filing the lawsuit, he did not make any claim for any mineral interests owned by his father because "there wasn't any mineral rights coming in to speak of. If there were, I wasn't aware of it." However, Brett stated that he was "under the understanding that the mineral rights were with the property. . . ." Brett also stated that his father told him that the property was "all going to be mine someday."

At the conclusion of the hearing, Harold requested that he be allowed to submit a brief to present his argument that Brett was not entitled to any mineral interests in the property because the mineral rights had been severed from the surface rights of the land. The trial court granted Harold's request, and both Harold and Brett submitted post-trial briefs.

On December 26, 2002, the circuit court entered an order, which stated in part:

3. Plaintiff claims an equitable one-half interest in real property and prayed in his original and amended Complaint for a partition of the property and division of the proceeds of sale. As this Court previously found that the property should be partitioned, and that both Plaintiff and Defendant are entitled to the delivery of one-half of the sale proceeds or one-half of the property in kind.

4. The property has been sold since the entry of the original Order in this case, and proceeds of the sale have been divided equally between the Plaintiff and Defendant, with the exception that the Defendant received credit at the time of sale for payments that he made on the original note prior to the time that the property was refinanced and remortgaged in1984.

5. It is the finding of the Court that the parties both lived on the property, and both made contributions and improvements to the property and it appreciated in value. Based on the evidence before the Court it appears that all of the improvements caused the increase in value and the Court cannot assign specific values to any particular improvement made by either party.

6. It is the finding of the Court that during the occupancy of the property by the parties that the Plaintiff would from time to time request that his interest in the property be formalized, and the Defendant testified at the first trial of this case and at the most recent hearing that he would tell the Plaintiff that he could spend whatever he wished to on improvements to the property because some day it would all be his.

7. The Court finds from the testimony of the parties that the Plaintiff would not have continued to contribute to the payment of the mortgage nor construct improvements on the property or invest in the property had he not relied to his detriment upon the statements of the Defendant. Further, the Court finds that the Plaintiff's reliance on Defendant's statements was reasonable and in good faith.

8. The Court finds that if the Defendant were allowed to retain all of the proceeds of the sale of the property or all of the rights of ownership in the property, that he would be unjustly enriched at the expense of the Plaintiff. It is the finding of the Court that a constructive trust should be imposed upon the above described property, and the proceeds from its sale, and that the Plaintiff and Defendant should each be beneficiaries of the constructive trust. The property has been sold and the proceeds of the sale of the surface have been divided. It is the finding of the Court that the mineral interests which were reserved by the parties are the property of the Plaintiff and Defendant equally.

\*\*\*

On appeal, Harold argues that the trial court's finding that Brett is entitled to an undivided one-half interest in both the surface rights and the mineral rights of the property, under a theory of promissory estoppel, is clearly erroneous since there is insufficient evidence in support of such a finding. Harold also argues that the trial court was clearly erroneous in finding that the surface rights in the property should be divided equally because the division results in a substantial windfall to Brett. Finally, Harold argues that the trial court's finding that the mineral rights in the property should be divided equally between the parties is arbitrary and clearly erroneous.

### Standard of Review

Our standard of review in chancery cases is de novo. *HRR Arkansas, Inc. v. River City Contractors, Inc.*, 350 Ark. 420, 87

S.W.3d 232 (2002). We do not reverse a finding of fact of the chancery court unless we conclude that the chancery court has clearly erred. *Id.; Weigh Sys. South, Inc. v. Mark's Scales & Equip., Inc.*, 347 Ark. 868, 68 S.W.3d 299 (2002). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *HRR Arkansas, supra; Bendinger v. Marshalltown Trowell Co.*, 338 Ark. 410, 994 S.W.2d 468 (1999). We give due deference to the superior position of the trial court to view and judge the credibility of the witnesses. *Noland v. Noland*, 330 Ark. 660, 956 S.W.2d 173 (1997).

### Promissory Estoppel

Harold contends that the trial court based its decision to grant Brett an undivided one-half interest in the property on the legal theory of promissory estoppel. Indeed, the trial court found that Brett "would not have continued to contribute to the payment of the mortgage nor construct improvements on the property or invest in the property had he not relied to his detriment upon the statements of the Defendant." Harold argues that the theory of promissory estoppel does not support the division of the property determined by the trial court.

In *Van Dyke v. Glover*, 326 Ark. 736, 744-45, 934 S.W.2d 204 (1996), this court stated:

> The blackletter law on promissory estoppel is found in the Restatement (Second) of Contracts:
>
>> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

We have held that the party asserting estoppel must prove it strictly, there must be certainty to every intent, the facts constituting it must not be taken by argument or inference, and nothing can be supplied by intendment. *Ward v. Worthen Bank & Trust Co.*, 284 Ark. 355, 681 S.W.2d 365 (1985) (citing *Martin, Inc. v. Indiana Refrigeration Lines, Inc.*, 262 Ark. 671, 560 S.W.2d 228 (1978)). Further, we have stated

that a party asserting estoppel must prove that in good faith he relied on some act or failure to act by the other party and, in reliance on that act, suffered some detriment. *Peek v. Simmons First Nat'l Bank*, 309 Ark. 294, 832 S.W.2d 458 (1992) (citing *Worth v. Civil Serv. Comm'n*, 294 Ark. 643, 646, 746 S.W.2d 364, 366 (1988)). The court of appeals has stated that the general rule is that claims of promissory estoppel are questions for the fact finder. *See Taylor v. Eagle Ridge Developers, LLC*, 71 Ark. App. 309, 29 S.W.3d 767 (2000); *Country Corner Food & Drug, Inc. v. Reiss*, 22 Ark. App. 222, 737 S.W.2d 676 (1987); *Dickson v. Delhi Seed Co.*, 26 Ark. App. 83, 760 S.W.2d 382 (1988). Whether there was actual reliance and whether it was reasonable is a question for the trier of fact. *See Van Dyke, supra.*

We begin by addressing Harold's argument with respect to surface rights.

### Surface Rights

■ Harold contends that "[t]he statements allegedly made by Harold Rigsby, to the effect that Brett could 'do what he wanted to do' — 'that the property would all be his [Brett's] someday anyway', did not *induce* action on the part of Brett Rigsby." Further, Harold contends that the testimony concerning disagreements over the improvements made by Brett does not reflect that Harold made any statement to Brett to induce him to make improvements. Harold maintains that Brett did not suffer detriment in his actions; rather, Harold contends that Brett enjoyed the benefits of his improvements. Specifically, Harold states that with regard to Brett's clearing the land, Brett received money from the sale of timber, and that a primary purpose of clearing the land was to construct ponds and clear fields to attract wild game. Since the trial court was in a superior position to judge the credibility of witnesses, we cannot say that it was clearly erroneous for the trial court, as the fact finder, to determine that it was reasonable for Brett to make improvements on the property in reliance of Harold's statement that the property would be Brett's someday. *See Van Dyke, supra.*

■ Harold further argues that the trial court's finding that the surface rights in the property should be divided equally results in a substantial windfall to Brett and, thus, the finding is clearly erroneous. To find unjust enrichment, a party must have received something of value, to which he was not entitled and which he

must restore. *Guaranty Nat'l Ins. Co. v. Denver Roller, Inc.*, 313 Ark. 128, 854 S.W.2d 312 (1993). We have stated that one who is free from fault cannot be held to be unjustly enriched merely because one has chosen to exercise a legal or contractual right. *Id.*

In his brief, Harold contends that he should have received at least 62% of the proceeds of the sale of the surface rights. Harold paid $19,500 for the property in 1971. In its order equally dividing the proceeds of the sale of the property, the trial court allowed Howard a credit of $12,606.25 for payments Harold made prior to any assistance from Brett. Therefore, Harold contends that his contribution, made prior to the 1984 loan, should be viewed as 62%. At the April 30, 2002, hearing, it was established that the property actually sold for $225,000. According to Harold, he should be "appropriately credited with 62% of the [$225,000] purchase price."

Harold offers no citation to authority for the proposition that he should be "appropriately credited" with 62% of the purchase price. We will not consider arguments that are unsupported by convincing argument or sufficient citation to legal authority. *City of Benton v. Arkansas Soil and Water Conservation Comm'n*, 345 Ark. 249, 45 S.W.3d 805 (2001).

We hold that the trial court's determination that Brett is entitled to an undivided one-half interest in the surface rights of the property is not clearly erroneous.

### Mineral Rights

Harold argues on appeal that the trial court erred in finding that Brett is entitled to a one-half interest in the mineral rights to the property because the mineral rights and rights to royalties under the lease were effectively "severed" by the lease long before Brett knew of the mineral rights and lease. Harold therefore argues that the trial court erred in awarding mineral rights and rights to the royalties to Brett because Brett obviously could not have detrimentally relied on something he did not know existed.

In its order, the trial court stated: "It is the finding of the Court that the mineral interests which were reserved by the parties are the property of the Plaintiff and Defendant." In addition, the trial court found that "both Plaintiff and Defendant are entitled to an undivided one-half interest in the mineral ownership of the property." It is clear that there is nothing in the order to

show that the trial court ruled on the "severance" theory now presented by Harold on appeal. We have repeatedly stated that a party's failure to obtain a ruling is a procedural bar to consideration of the issue on appeal. *Bell v. Bershears*, 351 Ark. 260, 92 S.W.3d 32 (2002); *Doe v. Baum*, 348 Ark. 259, 72 S.W.3d 476 (2002); *E-Z Cash Advance, Inc. v. Harris*, 347 Ark. 132, 60 S.W.3d 436 (2001). Since we are unable to consider Harold's argument concerning severance, we affirm the part of the trial court's order finding that Brett is entitled to an undivided one-half interest in the mineral ownership of the property.

Affirmed.

CORBIN, BROWN and THORNTON, JJ., concur in part; dissent in part.

D ONALD L. CORBIN, Justice, concurring in part and dissenting in part. While I agree with the majority's ruling affirming the trial court's award of a one-half interest in the surface rights to Brett, I cannot agree with its affirmance of the award of a one-half interest in the mineral rights. This court avoids the issue of whether there was a severance of the mineral rights by ruling that Harold failed to obtain a ruling on that issue. In so doing, the majority narrowly interprets the trial court's ruling. In its order, the trial court stated: "It is the finding of the Court that the mineral interests which were reserved by the parties are the property of the Plaintiff and Defendant equally." Clearly, by ruling as it did, the trial court rejected Harold's argument that the mineral rights had been severed from the surface estate. In fact, the court repeatedly stated from the bench that it was its belief that there had been no severance of the mineral estate from the surface. The fact that the trial court did not use the magic word "severance" in his written order is of no merit, as it clearly ruled on the issue.

Not only do I believe the trial court ruled on this issue, but I also believe the trial court ruled incorrectly. There was ample testimony that Harold had been the sole recipient of the royalty payments resulting from the lease with Hogback Excavation. It was not until after the trial court ruled that Brett owned a one-half interest in the mineral estate that he received any royalty payment. In fact, Brett testified that he never sought any portion of the royalty payments.

While this court has not specifically addressed a situation like the present one, we have discussed the effect a lease may have on

the two estates. In *Garvan v. Kimsey*, 239 Ark. 295, 389 S.W.2d 870 (1965), this court analyzed whether a short-term exploratory lease severed the mineral estate from the surface estate for purposes of separate tax assessments. There, this court stated:

> However, this court has also held that an oil and gas lease does not of itself constitute constructive severance of the two estates, but conveys only an interest and easement in the land itself and no title passes until the oil and gas are reduced to possession. (*Pasteur v. Niswanger*, 226 Ark. 486, 290 S.W.2d 852; *Clark v. Dennis*, 172 Ark. 1096, 291 S.W. 807; 16 Ark. L. Rev. 301.) In *Quality Coal Company v. Guthrie*, 203 Ark. 433, 157 S.W.2d 756, this court said: "While in Arkansas the two interests [estate in the surface and estate in the oil and minerals] may be severed, we do not understand that the mere fact of leasing the lands for exploration purposes *ipso facto* creates such severance." Nor are we convinced from our search of relevant Arkansas law that a short-term non-producing mineral lease, as is here involved, is such a severance as to fall within the terms of § 84-203, *supra*.

*Id.* at 297, 389 S.W.2d at 871.

In concluding as it did in *Garvan*, this court relied in part on its previous decision in *Pasteur v. Niswanger*, 226 Ark. 486, 290 S.W.2d 852 (1956). In that case, this court held that an oil and gas lease conveys an interest and easement in the land itself, but that no title passes until the oil and gas is reduced to possession. *Id.* (citing *Davis v. Collins*, 219 Ark. 948, 245 S.W.2d 571 (1952); *Clark v. Dennis*, 172 Ark. 1096, 291 S.W. 807 (1927); *Osborn v. Arkansas Territorial Oil & Gas Co.*, 103 Ark. 175, 146 S.W. 122 (1912)). This conclusion was consistent with our holding in *Shreveport-El Dorado Pipe Line Co. v. Bennett*, 172 Ark. 804, 290 S.W. 929 (1927), where this court held that oil severed from the soil and reduced to possession becomes personal property. In summary, it appears that our case law indicates that a lease that results in the excavation of minerals from the surface constructively severs the mineral estate from the surface estate.

It is this issue of severance that causes me concern in the present case. Because there was testimony indicating that the lease from Harold to Hogback Excavation has resulted in the severance of minerals from the soil and the payment of ample royalties to Harold, I believe the trial court erred in summarily ruling that

there was never any severance of the mineral estate from the surface estate.[1] For that reason, I dissent.

BROWN and THORNTON, JJ., join.

---

[1] While the abstract of this record does contain some testimony regarding the lease and payment of royalties, it should be noted that the record from the previous appeal of this case contains even more detailed testimony regarding the nature of the lease and the payment of royalties. There is also a copy of the lease agreement between Harold and Hogback Excavation. It is well settled that appeals will no longer be affirmed because of the insufficiency of the abstract without the appellant first having any opportunity to cure the deficiencies. *In re: Modification of the Abstracting System — Amendments to Supreme Court Rules 2-3, 4-2, 4-3, and 4-4,* 345 Ark.Appx. 626 (2001) (*per curiam*). Thus, pursuant to our new rule, I would give Harold fifteen days to supplement his abstract and addendum.