ARKANSAS BLUE CROSS and BLUE SHIELD
*v.* Marilyn HICKY

CA 94-184                                    900 S.W.2d 598

Court of Appeals of Arkansas
En Banc
Opinion delivered July 5, 1995

174

*Mike Bearden*, for appellant.

*Easley, Hicky & Cline*, by: *R. Alan Cline*, for appellee.

JAMES R. COOPER, Judge. The appellant, Arkansas Blue Cross and Blue Shield, appeals from an order of summary judgment

granted in favor of the appellee. On appeal, the appellant argues that the trial court erred in granting the appellee's motion for summary judgment because there is no public policy preventing modification of an insurance contract and in denying its summary judgment motion because the insurance certificate clearly allowed for amendment of benefits on the annual renewal date. We reverse and remand.

Summary judgment should be granted only when a review of the pleadings, depositions, and other filings reveals that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Johnson v. Harrywell, Inc.*, 47 Ark. App. 61, 885 S.W.2d 25 (1994).

The facts in the case at bar are not disputed. The appellee and her son, Chris Hicky, are subscribers of Arkansas Farm Bureau Federation Group and as such are insured under a "Comprehensive Major Medical Group Benefits Certificate" issued by the appellant, Arkansas Blue Cross and Blue Shield. In 1988, the appellee's son was diagnosed with a growth hormone deficiency. In 1989, he began receiving as treatment a series of injections which was expected to continue for two to three years. At the time the treatments began, the appellee's insurance certificate provided that after the appellee satisfied a $600.00 annual deduction, the appellant would pay 80% of the first $5,000.00 of medical expenses and 100% thereafter.

The insurance contract between the appellant and Farm Bureau has an annual renewal date of October 1. In order to avoid a substantial rate increase on October 1, 1989, Farm Bureau requested certain benefits under the insurance contract be reduced. One of the modifications provided that the amount paid for pharmaceutical-related expenses would be reduced to 50%. The effective date of the changes was October 1, 1989, and on August 30, 1989, Farm Bureau sent a letter to each of its subscribers detailing the changes in their medical coverage.

Pursuant to these changes, the appellant began paying 50% of Chris' pharmaceutical expenses after October 1, 1989. The appellee subsequently filed suit against the appellant seeking judgment for the remaining 50% of Chris' pharmaceutical expenses. The appellant denied that the appellee was entitled to any relief; and thereafter, both parties moved for summary judg-

ment. In granting summary judgment on behalf of the appellee, the trial court made the following findings:

> There was consideration for the insurer to change the coverage of the policy.

> The insurer cannot change the coverage of the policy to affect a claim which is already in place. The claim herein was already in place. The doctor had diagnosed a growth hormone deficiency and determined that the treatment should be a series of regular injections over a period of two to three years. Blue Cross-Blue Shield was contacted prior to commencing the injections and assured that the expense of the injections would be covered under the terms of the policy. The injections were started and Blue Cross-Blue Shield began paying in accordance with the policy. On October 1, 1989 some ten months later, Blue Cross-Blue Shield changed their policy and reduced the payments. Plaintiff relied upon this coverage and obviously could not on October 1, 1989 obtain other insurance coverage for a previously diagnosed illness.

> Since the Defendant had accepted the claim, had commenced payment for the condition and had allowed Plaintiff to rely on Defendant's acceptance of the claim and coverage, the insurance company should be held responsible for the entire period of the treatment. To allow Defendant to place the Plaintiff in the position of being partially not covered by insurance and most likely not able to obtain any coverage violates public policy.

The appellant first argues that the trial court erred in awarding the appellee summary judgment based on a violation of public policy because there was no public policy in effect preventing amendment to the insurance policy. In support of its argument, the appellant relies on the statement of coverage language from the insurance certificate issued to the appellee, which provides in part:

> This Benefit Certificate contains the complete agreement of your insurance benefits between Arkansas Blue Cross and Blue Shield, A Mutual Insurance Company (the Plan), and the Arkansas Farm Bureau Federation (Farm Bureau).

. . . .

> The Group Member (Farm Bureau) is recognized as your agent for all dealings with respect to:
>
> > 1. Changes in coverage status (from individual to family or from family to individual);
> >
> > 2. Submitting membership applications to the Plan; and
> >
> > 3. Receipt of all communications and notices from the Plan.
>
> We will consider you to have received any notice mailed to you at the current address on our records.
>
> The Plan reserves the right to amend the benefits, conditions and premiums in connection with this Certificate. If we do so, we will give 30 days' written notice to Farm Bureau, and the change will go into effect on the date fixed in the notice.

The appellant asserts that the certificate clearly gives the appellant and Farm Bureau the right to amend coverage under the policy and that the appellee has cited no authority that public policy prevents competent parties to a contract from voluntarily amending their agreement.

There is no dispute that Farm Bureau requested and agreed to modification of the certificate coverage in order to minimize the rate increase for its subscribers. An insurer may contract with its insured upon whatever terms the parties may agree upon which are not contrary to statute or public policy. *Shelter General Ins. Co.* v. *Williams*, 315 Ark. 409, 867 S.W.2d 457 (1993). The general rule is that a contract is against public policy if it is injurious to the interests of the public, or contravenes some established interest of society or some public statute, or is against good morals, or tends to interfere with the public welfare. *Guaranty Nat'l Ins.* v. *Denver Roller, Inc.*, 313 Ark. 128, 854 S.W.2d 312 (1993). The public policy of this state is found in its Constitution and statutes. *Id.* at 139.

We have not found any provision in any constitution or statute that would govern the issue here. However, there are

cases that have dealt with insurance provisions that violate public policy. In *Arkansas Blue Cross & Blue Shield* v. *Long*, 303 Ark. 116, 792 S.W.2d 602 (1990), the issue involved an exclusionary clause that denied coverage for in-patient services rendered prior to the time the insured terminated the in-patient admission against medical advice. Our Supreme Court held that the provision, when weighed against the consequences for the insured, did not square with public policy and noted that the appellant could accomplish its goals by excluding coverage for expenses occurring after a discharge against medical advice. The Court further stated:

> Moreover, the provision, as Blue Cross would have it operate in this case, works a forfeiture on the insured, and such provisions have not been favored by the courts in any case. 2 G. Couch, *Couch on Insurance 2d*, (Rev'd ed.) § 15:49 (1984); *Missouri State Life Insurance Co.* V. *Foster*, 188 Ark. 1116, 69 S.W.2d 869 (1934). As we stated in *Foster*,
>
>> Forfeitures cannot and should not be declared when the rights of parties have become vested . . . We are irrevocably committed to the doctrine that, when liability attaches, no subsequent act of the parties will effect a forfeiture of the policy, unless the contract of insurance by the definite and explicit terms so provides.
>
> . . .
>
> As stated in 10 G. Couch, *Couch on Insurance 2d*, (Rev. ed) § 41-378 (1982):
>
>> The courts must enforce policy conditions in the nature of exceptions or limitations if they do not run counter to statute, are not inconsistent with public policy and are explicit in terms and plain of meaning.
>
>> At the same time, since the insurance business is affected with the public interest, the right of the insurer to incorporate in its contracts such provisions as it may desire, is subject to the limitation that conditions avoiding the policy should not be unreasonable. . . .

303 Ark. at 118-19, 792 S.W.2d at 603. *See also Arkansas Blue Cross Blue Shield* v. *Brown*, 33 Ark. App. 44, 800 S.W.2d 724 (1990).

The appellant asserts that the case at bar is distinguishable because no benefits had accrued at the time it changed its policy because the policy did not insure against a specific injury but "eligible medical expenses incurred" as provided in the stop loss provision of the certificate. The appellant contends that no rights had vested at the time it modified its policy and therefore, the change did not cause the appellee to forfeit vested rights. The appellant cites *Arkansas Blue Cross Blue Shield* v. *Foerster*, 38 Ark. App. 228, 832 S.W.2d 280 (1992), where this Court distinguished between accident or illness policies and medical expense policies. In *Foerster*, we stated that:

> It is said that if the policy is an accident or illness policy, the insured risk is considered the accident or illness itself. Conversely, if a policy provides coverage for expenses or charges, it is the incurring of expenses which is considered the contingency that gives rise to the insurer's liability. Thus, when an insurance policy insures against accidental injury, the insured's right to receive benefits is considered "vested" upon the occurrence of the accident, and termination of the insurance policy does not affect the insurer's liability or its duty to pay benefits for related medical expenses incurred after the termination of the policy. However, when a policy insures against the incurrence of medical expenses, the benefits cease when the policy is terminated and the insurer is not responsible for expenses which arise after termination.

38 Ark. App. at 231-32, 832 S.W.2d at 282. (Citations omitted.)

A situation similar to the case at bar arose in *Harvard Community Health Plan, Inc.* v. *Zack*, 33 Mass. App. Ct. 649, 603 N.E.2d 924 (1992), in which the appellant, Linda Zack, appealed from a judgment that allowed the appellee, HCHP, to limit the physical therapy provided to the appellant's two special needs children. The appellant had been an HCHP subscriber since 1976, and HCHP had provided unlimited physical therapy for the children since 1983. In 1986, the policy was changed to limit physical therapy benefits to three months per illness. Notwithstand-

ing this limitation, the appellant's children continued to receive unlimited physical therapy until 1989, when HCHP informed the appellant it would limit visits per the insurance agreement. In 1990, HCHP terminated further physical therapy after the three months limitation was reached. Part of appellant's claim was handled by arbitration; however, she appealed the award of summary judgment to HCHP that held HCHP was not estopped from limiting physical therapy benefits in future contract years. On appeal, the Court in *Zack* held:

> We agree with the judge's determination that a new contract between HCHP and its members comes into existence each year. HCHP set out its rights in the subscriber agreement, which is the "entire contract between the Member and HCHP." According to the language of the subscriber agreement, health care services are provided to enrolled members, subject to the terms of the subscriber agreement, "for the period the premium covers." Each year, subscribers are given an "open enrollment" period, from April 1 through April 30, during which they may make membership changes to enroll dependents with HCHP. HCHP reserves the right to revise the benefits provided to members, after designated notice, without the consent of members. These facts support a finding that the contract between HCHP and the subscriber was not perpetual but was renewed annually.

> HCHP's letter of January 30, 1991, put Zack on notice that, after the April, 1991, "open enrollment" period for the 1991-1992 contract year, HCHP would apply the three-month limitation on physical therapy benefits to the Zack family. The plain language of the subscriber agreement had contained this limitation since 1986. At the time of the arbitration, Zack reasonably could have relied on the expectation of unlimited benefits since she was granted repeated "discretionary exceptions" to the limitation by HCHP representatives. Once timely notified of the change in benefits, however, Zack could no longer reasonably rely upon the expectation of unlimited physical therapy benefits.

> In sum, Zack is not entitled to future unlimited physical therapy benefits in perpetuity due to the provision of

such benefits in the past. See *Garvey* v. *Prudential Ins. Co.*, 596 F.Supp. 1119, 1124 (E.D.Pa. 1984) (plain terms of the contract precluded any "vested" right to unlimited private nursing benefits, and past benefits could be modified upon proper notice).

603 N.E.2d at 926-27.

In the case at bar, the modification did not work as a forfeiture or termination of coverage but reduced coverage by a policy modification on the renewal date. We do not find that the benefits under this policy were vested rights as under an accident or illness policy. We agree with the reasoning in *Harvard Community Health Plan, supra,* and conclude that the language of the policy plainly provided for modification and that the appellee was not entitled to have future benefits paid at the same rate as past benefits due to the provision of those benefits in the past.

The appellant argues for its second point that the trial court erred in denying its motion for summary judgment because the insurance certificate clearly allowed for amendment of benefits on the annual renewal date. We note that it was not contended by the appellee that the appellant could not modify its policy provisions or that the contract was ambiguous. The appellee only argued that to do so in relation to the circumstances of this claim would violate public policy.

Where the language of the policy is unmistakably clear, it is unnecessary to resort to rules of construction, and the policy should not be interpreted to bind the insurer to a risk that is plainly excluded and for which it was not paid. *Arkansas Blue Cross & Blue Shield, Inc.* v. *Foerster*, 38 Ark. App. 228, 832 S.W.2d 280 (1992). Here, the facts were not disputed and the issue of whether the appellant could amend its insurance policy under the circumstances presented was one of law. We find that the insurance policy clearly allowed for amendment of benefits on the annual renewal date and that the appellant was entitled to judgment as a matter of law. Thus, we reverse and remand for the trial court to enter judgment in favor of the appellant.

Reversed and remanded.

MAYFIELD, J., dissents.

PITTMAN, J., not participating.

MELVIN MAYFIELD, Judge, dissenting. I dissent because the trial court granted summary judgment and I think there were issues of fact to be decided.